Hear ye, hear ye, hear ye, the United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good afternoon, gentlemen. Thank you for appearing in this Zoom context. We will approximate the normal procedure in New Orleans as much as possible, which means that when the timer is on and it becomes a yellow light, you have two minutes to go and when the red light comes on, you should conclude as quickly as possible unless you're answering a question from the court. We have reviewed your briefs and record excerpts. We probably have not read the entire record before we start. We do appreciate record citations. I would ask you please to make sure that the mute buttons are on any other devices, wherever you are, and if anybody else is participating with you, we don't need phones ringing in the background. I would also say, just as in New Orleans, you do not video, you do not record these will be available for audio download practically instantaneously. And then the final thing I would say is our accommodation to this setting with delayed transmission, each of you can have five minutes uninterrupted at the beginning of your presentation if you so choose. So just let us know. So the first case on the docket is number 210508 Hobbs v. Warren and we'll hear from Mr. Illich. Thank you, Judge Jones. I appreciate the offer of five minutes, but I'm happy to entertain questions at any time and hopefully next time we'll be in New Orleans and this can be a little bit easier. May it please the court. My name is Niles Illich and I represent the appellant Tony Hobbs. This case presents two issues and neither is particularly complicated. First, this court must decide whether the 101 paragraph 17 page complaint with nearly 53 pair with nearly 50 paragraphs devoted to appellee informed the defendant of the allegations against him. And second, this court is asked whether the defendant was entitled to qualified immunity based on the question of whether the law was clearly established. The first question before the court is whether the district court properly applied precedent when it found that appellant's pleadings were deficient. The court knows the standard and I don't want to belabor that, but it begins by looking to the pleadings and accepting all well pleaded facts as true. The test is what's written in the pleadings and the court asked did the plaintiff include facts that would allow the court to reasonably draw inferences to point to the defendant's liability. As a preliminary matter, the court can look to paragraph 6 through 53 at ROA 238 through 244 and see the nearly 50 paragraphs that are devoted to appellee. Now here appellant has alleged a claim of deadly force that appellee used deadly force. The claim is that Warren illegally used a car as deadly force. The claim is not that Warren was wrong to intervene in this case, but that Warren was wrong to use deadly force. Well, Mr. Illick, since you're allowing us to have questions, is it deadly, is anytime an officer opens a car door against a defendant or suspect, is that invariably deadly force if the car is stopped, if it's going five miles an hour, or if it's going some speed? Did you allege anything about that? And I see two questions there and if I may take them in that order, Judge Jones. The first question I understand to be is anytime a car used against a defendant deadly force and the answer there is of course no. It must depend a little bit on the circumstances of how it's done. A parked car that's opened into a defendant would presumably not be deadly force. A car that's driven in at 100 miles an hour with a door that doesn't retract would of course be deadly force. And then there's a wide spectrum in between. So there is no specific allegation in these pleadings that say the car was going 24 miles an hour at the moment of impact or 154 miles an hour. What it said is the car is used as a deadly weapon. And then when we get to summary judgment, I think we have the burden to show the manner in which the car was used with summary judgment. So I think I hope that answers your two questions here. And I think yes, Judge. Let me follow up on that. Maybe I've missed it. I just need to be oriented. Was the Mr. Hobbs running parallel or perpendicular to the car? Was the car crossing the lane? I don't understand the particulars, the physical particulars of if he opened the car door and hit him in the back or if he was running forward or did they have to cross over lanes of traffic or what time of day it was? I just need some more facts. Sure, Judge Clement. And I'm happy to provide those to you. Mr. Hobbs is coming up perpendicular to the flow of traffic. So the pleadings don't say how busy the road was. They don't say how much was on the road. And the trial court judge specifically rejected the claim that it was a busy interstate highway. We simply don't know how busy it was. You know what? Even those in Houston know what the LBJ freeway is. Well, Judge Jones, I don't want to get too far out of the record here, but certainly LBJ is busy at some parts and not at other parts. And I think that becomes a summary judgment issue of whether that is the case as opposed to a pleadings issue. The pleadings here allege, and Judge Clement, I'll get back to your question in just a minute. I'm sorry to step away from that. But the pleadings allege that Hobbs was trying to cross the freeway. And I think when we look at that in the proper context in 12b6 that he was trying to get safely, that not that he was some sort of suicidal person or that he really looked like a danger to others that he was trying to get across safely. Now, your point, Judge Jones, may be a very valid one when we come to summary judgment. But looking at it in the context of 12b6, I'm not so sure that that sort of common knowledge about LBJ gets us very far. Now, Judge Clement, if I may answer your question about sort of the practical matters here. The client is there. Mr. Hobbs is in Home Depot. They think he might be stealing something. I know all that part. I'm just talking about when he got hit by the door. Was he running toward him? Was he hit in the front? Hit in the back? He was running perpendicular. And I think he was hit in the front and knocked forward. And he was in the first lane of the road. Now, it often says the first lane of traffic. But when we use the word first lane of traffic, I think we just mean not a volume of cars, but in the lane that cars drive in. So he's hit in the far right lane of traffic. And Warren moves toward him to get there. I think moving towards the right is what the pleadings would support. Does that answer your question, Judge Clement? What about the dash camera evidence? Was that attached to the first amendment complaint? I certainly believed it was. And I concede that I was in error. I do not think it was attached. It was supposed to be attached. It was discussed as being attached. But when I went and looked, I think Mr. Levine is correct on that point. And it isn't. But I think we can step back. So you do have the dash cam video? Yes, Judge Graves. The dash cam is available. But it is not part of the record on this video. Wouldn't that show the speed of the vehicle? Well, you would think so, Judge Graves. When Mr. Warren was in the car, he was in his wife's private car. He was not in a police car. So it doesn't show the speed of his vehicle. We have dash cam, but it concerns cars that came up afterwards. So the dash cam is not from the car that the officer was driving? Correct, Judge Graves. What we have is later dash cam. And then we have body cam that comes up after the collision. But neither one of those are in the record, as Mr. Levine correctly pointed out. You filed a motion to amend your pleading, to amend your complaint. Is that right? That's correct. That motion was denied? No, it was granted. And we amended the pleadings. And I understood the video had been attached to that. Well, there are two things there, Judge Graves. And forgive me, I may have misunderstood your question. We had an original complaint. Then we had a first amended complaint that we had to ask permission. He gave us permission to do that. And then when the judge denied or granted Mr. Levine's 12B6 motion, we asked for leave inside of that to amend further. And that was denied. Does that answer your question? That's the motion I'm talking about. Yeah. Okay. And forgive me, I have several versions there. But what I think I'm trying to get around to is that deadly force is allowed when an officer reasonably believes that the suspect poses a serious physical harm to the officer or others. And I don't think we get to that on this petition. Now, this encroaches quickly on summary judgment evidence. But perhaps the best way to think about this is to consider whether Warren had used a gun and shot Hobbs instead of using a car. I think that would be a very easy case for this court. And I don't think very many people would say that he was justified under these circumstances in using a gun. Here, instead of using the mass and velocity of a bullet, he used the mass and velocity of a car, far slower, but with a much greater mass. But there's no reason to believe, based on the pleadings, that Hobbs posed a sufficient threat of serious bodily harm to himself or others to justify the use of deadly force. Judge Graves, were you? No, go ahead. There's no pleading about how busy the freeway was, and there was no pleading about the officers who were chasing Mr. Hobbs, the officers who would have potentially crossed the freeway. But instead, the pleadings established that Hobbs was trying to cross the freeway safely, that he wasn't suicidal, that he was no threat to anyone else. And further, and I think this goes a little bit to Judge Jones's point, the district court specifically rejected Warren's claim that 635 was a busy interstate highway. Well, he took notice of the fact that it's an interstate freeway. Let me ask you a question. How, did you ever ask the district court for discovery limited to the question of qualified immunity? We did not, no, Judge Jones. I mean, it seems, you know, I personally think you're really on the edge of sufficient pleading under Iqbal, simply because deadly force is a conclusion, not a fact. And so you could say that an officer threw a rock at Hobbs, and whether that was deadly force or not, would depend on whether it was a tiny little pebble or a large boulder. So, you know, it's very possible that you were wasting the judge's time in not being a little more specific, because apparently, I gather from your answers, you have some about what the facts will come out to be. Well, Judge Jones, some of that didn't come until very late in the game. But, and it certainly would have been nice to have it in there. And I believed that it was, but. But in the Connection Council, this last motion to amend, subsequent to, I guess, the ruling on the 12B6 motion, you didn't appeal that, though, did you? The judge denied that motion. No, we did not, Judge Graves. That's not in our brief, and we haven't raised that. All right. Turning very quickly, just to a couple of things that we go here, I think one of the issues here is to talk about the severity of the offense. And the judge in this case made a lot of, focused a lot on paying attention to what the judge knew and not what he didn't know. And I think what we have to understand, and maybe is a little bit tricky, is that it's important to recognize that Warren had no idea what the underlying offense was. He doesn't have a police radio. He doesn't know what's happening. He simply sees a man coming up. He sees police behind him, and he decides to intervene. Now, there's been this argument about, and everyone agrees that Warren was off duty. Everyone also agrees that when an off-duty police officer in Texas sees a person commit a criminal act, that person becomes an on-duty police officer. The question then becomes, and I don't think it's addressed in the briefing, is what is the duty of an on-duty police officer when he sees a criminal act? Must he act? And I think we can look to 14.02 of the Texas Code of Criminal Procedure, which is permissive. So if a police officer sees a person commit a criminal act in their presence, the police officer may arrest without a warrant. It is not a must. So I think when we look at the severity of the offense, what we have to really recognize is that Warren interjected himself into this. He used deadly force, and he had absolutely no idea what the offense was. Now, of course, it was a suspected shoplifting that didn't even occur, but that's not really the point. The point is that he didn't know what the allegation was. Now, I have other points. What about the fact that he knew that he was fleeing from police officers who were trying to catch him and yelling, stop, stop? Yes. Factor in? Judge Clement, I do think it factors in. It factors into his decision to get involved, but I don't think it gets him far enough to use deadly force. So he absolutely had a right to come in. He had a right to decide to get involved in this. He had a right to decide to help fellow officers. But I don't think in this absolute lack of knowledge, and there's no dispute that he knew what's going on here, that he then was justified in using deadly force. And if we did come to that conclusion that an officer who just sort of comes onto a scene doesn't know what's going on and just sees someone being chased could use deadly force, we're really entering into a really strange world that I think would conflict with a load of precedent from this court and from the Supreme Court. But very quick. Are you tired to the allegation deadly force? Could you repeat that for me? Are you tired, tied to the allegation of deadly force? Yes, Judge Jones. I think our pleading is tied to its alleged deadly force. Because the guy fell back down on his head. He was bleeding in his brain. He lost hearing in his ear. I mean, that could be viewed as excessive rather than deadly. Well, and Judge Jones, that's certainly true. But I don't think it is the nature of the injury that determines whether or not it is deadly force. And this might go back to your prior question. You're going to snatch the feet out of the jaws of victory if you can't accept a friendly suggestion. Well, and we're happy to, this could easily be, we'd be happy to go forward on excessive force on this. And but if I could, I only have 30 seconds left here. If I could turn to qualified immunity very quickly. It was decided on the second prong of qualified immunity on clearly established law. We've cited four cases here. Brown, Darden, Cooper and Pena. The court really focused on Brown, but I don't think looked at the others. And I think when the court looks at the other three cases, they'll see that. May I finish the sentence? Yes. That the law was clearly established. So we asked the court to reverse the district court's ruling and to remand to the district court. Thank you. All right. So thank you, Mr. Levine. Thank you. And may it please the court. My name is Scott Levine, and I represent Appali officer Kyle Warren. I'm also happy as Mr. Illick was to entertain questions at any point in my argument. This court should affirm the district court's dismissal for two reasons. First, the district court and the magistrate judge both correctly concluded that based upon the facts alleged, there is no clearly established law. Second, the district court correctly concluded that the use of force as alleged was not excessive or objectively unreasonable. As this is an appeal from a 12B6 motion to dismiss, the discussion must be focused on the pleadings. As this court is aware on February 19th, 2019, magistrate judge Irma Ramirez recommended that the district court grant officer Warren's motion to dismiss. The magistrate's recommendation begins at page 422 of the record. The magistrate judge found that taking Hobbs allegations is true. He had not carried his burden of identifying controlling precedent or a robust consensus that squarely governed the specific facts of this case. Nor was the constitutional question placed beyond debate such that any reasonable officer would know that using a door check to stop a suspect attempting to run across an interstate highway violates the fourth amendment. This finding is set forth on page 433 of the record. Mr. Levine, this door check, is this some standard procedure employed by officers to stop or apprehend a suspect? Your honor, as we are here on a motion to dismiss, the plaintiff's pleadings have not addressed the matter. What we know based on the pleadings is this, and I was about to get to what facts were actually alleged. But Mr. Officer Warren was an off-duty police officer in the passenger car, in the passenger seat of his wife's car when they saw Mr. Hobbs. Now, these are what the allegations actually say in the first amended completing, the first amended complaint. I'm sorry. It said Mr. Hobbs attempted to cross interstate I-635. I'm sorry, as Mr. Hobbs attempted to cross interstate I-635, defendant Warren instructed his wife to drive towards Mr. Hobbs. Now, I think in context, what we need to understand is in the initial complaint, what the plaintiff alleged was that Mr. Hobbs was standing on the shoulder of the freeway and that Mr. Officer Warren directed his wife to drive over to the shoulder. And then that's when he was struck as he was standing waiting for traffic to lighten. After the plaintiff obtained video footage from the city of Mesquite, the plaintiff then had to amend his complaint. And what is now alleged is that as Mr. Hobbs attempted to cross interstate I-635, defendant Warren instructed his then wife to drive towards Mr. Hobbs. Now, to the questions that were posed to Mr. Illick, Mr. Hobbs- Mr. Levine, my question about the door check. Yes. Who coined the phrase door check? I mean, people call it a door check like it's routine, like it's used, like it's some tactical device. That's all I'm asking you. So either somebody coined the phrase door check for this case or it exists somewhere in the culture, in the lexicon. Do you know anything about that? What I know from this case is that in the pleadings, the Mesquite officers who are caught on audio after the event referred to this as a door check. All right. The brief says something about a modification of a hockey term. Yes, that is from Mr. Illick's brief, and he's referring to a case out of Washington State. When the door made contact with Mr. Hobbs, was the car moving forward? This is what's alleged, and that's a great question. What was alleged is upon being struck by the weight and momentum of the car door, Mr. Hobbs was thrown down onto the pavement. The preceding paragraph, and this all is on page 239 of the record, says as she approached Mr. Hobbs, Defendant Warren opened the passenger door of the moving vehicle and used it as a weapon to strike Mr. Hobbs. So here's what we know. We know that they have alleged that the car was moving, although we don't know whether that means it was rolling to a stop. We don't know what that means, but we do know that what he was struck with was not the weight and momentum of the car, it was the weight and the momentum of the car door. And so when Mr. Illick says that there's pleadings alleged that they were in the first lane or they were pleadings alleged on how he was running, nothing is alleged in that regard. What is alleged is what I just read to you. And I think that going back to Judge Jones' point, Ashcroft v. Iqbal from the Supreme Court 556 U.S. 662 at page 678 specifically says that a plaintiff is not entitled to relief in the context of a motion to dismiss when the facts do not permit the court to infer more than a mere possibility of misconduct. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. And so here, as Mr. Illick has said, and as they've said in their briefing, if the car was rolling to a stop and he opened the door, well, that's not deadly force. And so when the facts allow are consistent with non-liability, and I would contend that there is, we're here on a motion to dismiss after the plaintiffs were granted leave to amend, if they wanted to specifically allege that the car was moving at a deadly speed, they could have done that. They did not do that. They allege that he was hit with the momentum and weight of the car door. And so that is what they pled. Mr. Levine, I mean, good grief. This fellow had bleeding, he had bleeding on the brain. He lost the hearing in his right ear. He had a bunch of fractured ribs. Now, all that is not a tap on the wrist or it's not a slap. So isn't it possible to infer from the nature of the injuries suffered that whatever blow, whatever the car was doing, no matter how inappropriately the plaintiff pleading characterizes the car, that it was a use of a great deal of force. Your Honor, I don't know that it does. And for this reason, obviously a car door, a car door is hinged. And so it's not a fit. Plaintiff says this is much like if he was hit with a bumper. It's not because the car door is hinged and will give weight. But the pleadings themselves say that Mr. Hobbs fell to the concrete. It sounds like he was cold cut, sort of. Your Honor, it's not alleged whether the injuries were caused by the door or him falling to the concrete. But in either event, in either event, what I think we need to keep in mind in this context is that the actions that Officer Warren took under the circumstances save lives. Because Mr. Hobbs was running across a interstate freeway, a 10 lane interstate freeway. Mr. Levine, isn't that a factual determination about whether or not it saved lives? Wouldn't that depend on how much traffic there was at the time? How many cars were on the freeway? The speed at which the cars were traveling? Wouldn't all those facts be relevant as to how dangerous the situation was in the moment? Well, if the question was how dangerous the situation actually was in the moment, then that might turn on facts. But what we're what we're here to consider is what it would be reasonable to believe from the perspective of Officer Warren. And as Officer Warren was on the highway, so it would be reasonable for him to bleed based on his observations of the conditions on the highway. So I don't understand how the conditions on the highway wouldn't be relevant to Officer Warren. Your Honor, in the context of which this interaction occurred, we must recall that what they pled is that he was running from Mesquite officers and crossing the freeway. There's no obviously, as the facts are alleged, this was a very rapidly evolving situation. And what Mr. What Officer Warren had to do was to exit the car to apprehend Mr. Hobbs. There is no reason to believe that the law would require that he turn around and examine how many cars were on the freeway and what actual risk may transpire because he made it. You're saying he made a determination that he was saving lives and removing a danger to other motorists. I don't know how you can do that. I didn't make that determination without knowing whether or not there are other motorists. Because he he understood that this was a as the court in Supreme Court and Scott B. Harris said, we don't need to follow the chase to its ultimate conclusion to know whether an officer's belief was reasonable at the time. And so we've got in and the court took judicial notice. We've got a 10 lane freeway, which which Mr. Hobbs was running across and which the Mesquite police were pursuing him across. And so that carries with it in an instant, in an instant, without 20, 20 hindsight and second guessing, it carries within an instant. Mr. Levine, that they were pursuing him or were they yelling at him to stop? They were pursuing him. Yeah. The complaint itself alleges that he was running from the Mesquite police officers. And factually, he was they were pursuing him. I don't think Mr. Illich or anyone else disputes that. Which lane was he on when he was hit by the door? Your Honor, there's no allegation in the pleading of which lane he was in when he was hit by the door. As Mr. Illich. Let me ask you the same question Judge Jones asked Mr. Illich. Why shouldn't this court order discovery on the limited issue of immunity? I mean, it seems like there's so much out there to be known that we don't know. And known unknowns, unknown unknowns, whenever. I would respond to that for two reasons, with two things, Your Honor. First is that's not relief that they've sought in this appeal. They've not complained in this appeal that they were not provided with time with discovery. And they have not specifically appealed in this case the fact that the district court said that they didn't get a second chance to amend their pleading. So it's not that is not before the court. The more compelling reason, perhaps, Judge Clement, is that if we look and this is where I was going and wish to discuss, if we look at the clearly established law prong of this, there is not a case. They cite the four cases, three of which are either unpublished or come after the event, leaving them with a single case upon which they're relying on to establish the clearly established law. And so in that regard, they have in this court recently in Morrow versus Meacham went to great lengths, if I might, to discuss the importance of the clearly established prong. And so if we're asking, well, why shouldn't they be able to conduct discovery? The answer to the based on any version of the facts that they've pled. There is no clearly established law that would give Officer Warren notice in the instant that he could not open his door to block Mr. Hobbs from crossing an interstate highway of 10 lanes. And what I'd like to do, Your Honor, if I may, is to discuss the qualified immunity point in that context. With respect to qualified immunity, there are four cases which are relied upon by the plaintiffs. And those cases are as follows. Brown v. Long Beach Police Department, 105 Federal Appendix 548. The Brown opinion was unpublished. And because it was unpublished, cannot constitute clearly established law. Setting aside the fact that it was unpublished, the security card in Brown tackled a high school teenage girl for simple truancy, even though she posed no threat to anyone. That is not the case here. As number one, Officer Warren clearly observed Mr. Hobbs violating two laws, evading arrest and inherently carries with it a high level of danger. And Mr. Warren, off duty in the passenger seat of his wife's car, was on the highway traveling. Brown does not get them there. Next is Darden. Darden occurred after the events in question. It was decided in 2018. And so opinions which come after the events in question also cannot establish clearly established law. In Darden, the court reversed the summary judgment because the plaintiff put forward evidence that he was repeatedly beaten and tased in a residence and ultimately died in handcuffs when he was not suspected of committing a violent offense, did not threaten anyone, was not resisting arrest or fleeing. That case also cannot possibly carry their burden here. Next is Pena versus City of Rio Grande, decided in 2020, again, after the facts. In Pena, a teenage girl had committed no crime, was not a threat, and was not actively resisting when she was tased. And so Pena can't possibly get them there either. The last case that they cite to is Cooper v. Brown. And Cooper v. Brown, in Cooper v. Brown, which is an opinion that was published, and in 2016, the officer in Brown allowed a dog to physically engage, meaning bite, a DUI suspect, even after the suspect was in would have led a reasonable officer to believe that the suspect was a threat. And this is the important point here. In Brown, it says, the court said, to be clear, we do not say that any application of force to a complaint arrestee is per se unreasonable, and we do not opine on the line of reasonableness. Instead, the court stated, we state only the obvious. Under the facts of this record, permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable. Obviously, on its own terms, Cooper v. Brown also does not provide for clearly established law, which means of the four cases which appellant relies on to say that the law has been clearly established, none come close. The last thing that the appellant wishes you to do is say, well, this is one of those cases that needs no precedent. It follows simply from Graham. But if we look at the case as it sits here today, well, two things. One, in Morrow v. Meacham, this court specifically recognized that taking that path, relying on the concept that just excessive force in the general high-level sense is enough, is error, and that path should not be followed. Setting that aside, in the instant case, as they have alleged, Hobbs had committed a crime which Warren could perceive and observe. He was evading police and running across an interstate highway. And the court did take judicial notice, your honors, of the makeup of I-635 at the location of the events, that it's a 10-lane freeway, and that this occurred on a business day during business hours, and that traffic would be, generally speaking, unpredictable in that regard. That Officer Warren had no way of knowing whether there would be one car, seven cars, 12 cars, and what speed they would be traveling at the time he made the arrest. And so, in this instance, with the Graham factors that exist, number one, we know that Hobbs was observed committing a serious offense, that there were people in danger, whether that be Mr. Hobbs for running around on an interstate highway, other motorists who might come upon Mr. Hobbs, or the police officers that were in pursuit. That's the second test that he was running from the police. And so, far from a clear case, the allegations in the pleadings that the court must view here, in the context of a motion to dismiss, and that the magistrate judge and the district court relied upon, demonstrate that each of the three factors in Graham was met here, which means it can't possibly be one of those clear cases that needs no case law. And so, as we sit here today, what plaintiffs would like you to believe is that if they got another chance at this, they would do better in their pleadings. But the district court specifically found, for reasons set forth in his opinion, that they had pled the best case they possibly could, and it wasn't enough. And therefore, the district court correctly granted the motion to dismiss. Okay. Thank you, Mr. Illick. You have some time for rebuttal. You're on mute. You're muted. Start over again, please. Thank you, Judge Jones. I apologize. I don't think I'll ever get used to that. The first thing I want to do is turn to, I think, Judge Graves' question, and it was this discussion, again, about the car moving. And I think we can look to ROA 240, and specifically to paragraphs 27 through 29, where there are pleadings that allege what was said at the scene. So, the officers that came up on the scene were Mesquite officers, Officer Warren is from Garland, and you can hear the police officers, and it's written down in the pleadings, Mr. Hobbs was door-checked pretty hard. They're attempting to discern his injuries. They talk about he was slammed with the door. You never know what a Garland PD officer is going to do. These are the words from the Mesquite police officers, as alleged in the pleadings, and that's at ROA 240, paragraphs 27 through 29. The second thing I want to talk about is Mr. Levine mentioned split-second decision-making, and I think that really is important in a lot of police cases because they're put in difficult positions. But here, when we look at the pleadings, we don't know, for better or worse, how long it was between the moment that Warren saw Hobbs and the moment that Hobbs acted. I don't think that saying that Warren had to act in a split second is really a legitimate argument in this case. There are many instances where police officers are required to act in a split second, but the pleadings don't establish that this is one of them. I think that ties in also to the argument about going out and saving lives. I think that's exactly a summary judgment argument and belongs there. And then the... go forward, and you can tell me how your case might satisfy that. Typically, those are cases where we have the suspect getting into some kind of fight or making some aggressive move on the police officer, whether he's going for a knife or not going for a knife. And I'm not talking about when he shot dead. I'm talking about when the policeman then gets him down on the ground and struggles with the fellow until he's neutralized. So in those cases, the policeman is saying, he was cussing at me. He was raising his hands toward me. He punched me once. I had to do this. And the defendant says, no, no, I wasn't aggressive at all. Now, in those cases, we say that the fact the fundamental facts are in dispute, and therefore one has to go forward with a minimal amount of discovery. How does your case stack up against that when your client simply says, I'm in the roadway, I'm trying to cross the interstate? I'm still fleeing the cops. I'm fleeing the cops. May I answer? I think that's exactly that kind of case. This turns very much on what was going on in the context around him. That defines how Mr. Warren should have responded, how dangerous this was to the defendant himself, how dangerous it was to others. That leads from the moment that Warren first sees Hobbs, until the moment Hobbs is laid out on the ground. And all of that, I think ties very much into the exact scenario you're talking about. And we benefit from the whole court benefits from discovery. Oh, your time is up. I tried to be as concise as possible there. Okay. Well, thank you, gentlemen. We'll take this case under advisement. Thank you. Thank you for the time. Thank you, Ron.